IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00051-MEH

EUROPEAN MOTORCARS OF LITTLETON, INC.,

    Plaintiff,

v.

MERCEDES-BENZ USA, LLC, and
BOBBY RAHAL MOTORCAR COMPANY,

    Defendants.

_____

# ORDER

_____

**Michael E. Hegarty, United States Magistrate Judge**.

Defendants Mercedes-Benz USA ("MBUSA") and Bobby Rahal Motorcar Company ("BRMC") seek to dismiss the First Amended Complaint of Plaintiff European Motorcars of Littleton, Inc. d/b/a Mercedes-Benz of Littleton ("MBOL") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF Nos. 41, 46. Defendants' motions are fully briefed, and the Court finds oral argument will not assist in their adjudication. The Court holds that MBOL's requests for a permanent injunction and a declaratory judgment are moot in light of a local zoning ordinance prohibiting the conduct MBOL seeks to enjoin and declare illegal. Regarding the merits of MBOL's claims for damages, the Court holds that only MBOL's first cause of action states a claim. Accordingly, BRMC's motion is granted, and MBUSA's motion is granted in part and denied in part.

**BACKGROUND**

I.      **Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by MBOL in its Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MBOL has been a franchised Mercedes-Benz automobile dealership since 1996. Am. Compl. ¶¶ 9, 11, ECF No. 39. Defendant MBUSA is the North American distributor and manufacturer representative for the Mercedes-Benz brand of vehicles. *Id.* at ¶ 8. To maintain its reputation, MBOL has consistently made improvements and investments in addition to those required by MBUSA. *Id.* at ¶ 19. Specifically, it recently purchased new vehicle lifts and upgraded its LED lighting throughout its dealership. *Id.* at ¶¶ 19–20. MBUSA consistently approved of MBOL's improvements. *Id.* at ¶ 23.

Beginning in 2015, while MBOL continued to make improvements to its dealership, MBUSA conducted market studies and eventually invited Defendant BRMC to establish a new Mercedes-Benz dealership less than nine miles from MBOL's facility. *Id.* at ¶¶ 26–28. MBUSA did not inform MBOL of its intent to establish a new dealership until July 2016, when an MBUSA employee traveled to Colorado and informally notified MBOL's management of MBUSA's plan. *Id.* at ¶¶ 29–31. In October 2016, MBUSA sent MBOL a formal notice pursuant to Colo. Rev. Stat. § 12-6-120.3(1), which stated the exact location of the new dealership: 13831-13871 E. Arapahoe Pl. Centennial, Colorado 80112. *Id.* at ¶ 37. This address is nine miles and two freeway exits north

of MBOL's dealership. *Id.* at ¶ 39. The notice also identified the new dealer operator as BRMC. *Id.* at ¶ 38. MBUSA and BRMC have taken material steps toward establishing the new dealership, such as executing a letter of intent. *Id.* at ¶¶ 41, 43.

When MBUSA establishes a dealership, it enters into an agreement with the dealer, which governs the parties' relationship. *See id.* at ¶ 13; Passenger Car Dealer Agreement 19, ECF No. 46-1.[1] The agreement gives the dealer an Area of Influence ("AOI"), which consists of zip codes and census tracts. Am. Compl. ¶ 13. MBUSA uses the AOI to judge the dealer's performance. *Id.* MBUSA's agreement with MBOL states that MBUSA may establish new dealerships within MBOL's AOI at any time. Passenger Car Dealer Agreement 19. However, the addition of a new dealer "will result in an alteration of adjustment of [MBOL's] AOI." *Id.*

## II. Procedural History

Based on these factual allegations, MBOL filed its Complaint in state court on December 6, 2016. Compl., ECF No. 4. On January 5, 2017, Defendants removed the case to this Court. Notice of Removal, ECF No. 1. MBOL then filed an Amended Complaint on February 22, 2017. Am. Compl. MBOL asserts five claims for relief. First, MBOL contends MBUSA unreasonably approved the new dealership in violation of Colo. Rev. Stat. §§ 12-6-120.3(1.5) and 120(1)(h). *Id.* ¶¶ 45–55. MBOL's second claim asserts a cause of action against MBUSA for fraudulent concealment. *Id.* at ¶¶ 56–65. MBOL's third claim alleges MBUSA breached the implied contractual duty of good faith and fair dealing. *Id.* at ¶¶ 66–73. Fourth, MBOL pleads an

---

[1] The Court may rely on the dealership agreement in ruling on Defendants' motions to dismiss, because MBOL specifically refers to the agreement in its Amended Complaint, the agreement is central to MBOL's claims, and the parties do not dispute the agreement's authenticity. *See, e.g.*, *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002).

independent claim for a permanent injunction against MBUSA and BRMC. *Id.* at ¶¶ 74–80. MBOL's final cause of action contends MBUSA violated Colo. Rev. Stat. § 12-6-120(1)(w)(II) when it attempted to modify MBOL's AOI without providing ninety-days' notice. *Id.* at ¶¶ 80–90. MBOL seeks (1) to enjoin Defendants from establishing the dealership, (2) a declaratory judgment stating that MBUSA violated all three statutory sections, and (3) damages suffered as a result of MBUSA's statutory violations and tortious conduct. *Id.* at 16.

BRMC responded to the Amended Complaint by filing its present motion to dismiss on March 1, 2017. ECF No. 41. BRMC contends MBOL's fourth claim—the only cause of action against BRMC—should be dismissed, because a permanent injunction is not an independent cause of action. *Id.* at 4–5. MBOL's response contends BRMC is a proper party, because BRMC has an obvious interest in the outcome of the litigation. MBOL's Resp. to BRMC's Mot. to Dismiss 2, ECF No. 50.

On March 8, 2017, MBUSA filed its present motion to dismiss, which seeks dismissal of MBOL's Amended Complaint in its entirety. ECF No. 46. According to MBUSA, MBOL does not have standing to assert a violation of Colo. Rev. Stat. § 12-6-120.3(1.5), MBOL does not sufficiently plead its tort and contract claims, MBOL's request for a permanent injunction is not a proper independent cause of action, and MBOL's final claim does not plead a violation of the section at issue. *Id.* at 4–30. MBOL filed its response on April 5, 2017. MBOL's Resp. to MBUSA's Mot. to Dismiss, ECF No. 61.

The day before MBUSA filed its Reply in Support of its Motion to Dismiss, *see* ECF No. 68, MBOL filed a motion to administratively close the case. ECF No. 66. MBOL informed the Court that the City of Centennial, Colorado recently repealed an ordinance that permitted MBUSA

and BRMC to establish the dealership at the proposed location. *Id.* at 5. Because "the proposed new dealership cannot lawfully be established at the noticed location," MBOL sought administrative closure of the case "until the factual circumstances ripen to permit the development and awarding of the proposed dealership." *Id.* On May 26, 2017, the Court held a hearing on MBOL's motion. After hearing argument from the parties, the Court denied MBOL's motion for the reasons stated on the record. *See* ECF No. 73. The Court took Defendants' motions to dismiss under advisement. *Id.*

## **LEGAL STANDARDS**

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, MBOL in this case bears the burden of establishing that this Court has jurisdiction to hear its claims.

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.  Twombly* requires a two prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## <u>ANALYSIS</u>

Before analyzing the merits of MBOL's claims for relief, the Court must first address the

extent to which MBOL's claims are moot because of the City of Centennial's zoning ordinance, which prohibits the establishment of the dealership at the proposed location. The Court holds that MBOL's requests for prospective relief are moot in light of the ordinance. However, because MBOL asserts justiciable claims for damages, the Court will address the merits of MBOL's claims for relief. With the exception of MBOL's first cause of action, the Court dismisses each of MBOL's claims.

## I.    Mootness and MBOL's Fourth Claim for Relief: Permanent Injunction

Although the parties do not dispute that this case is justiciable, "a court may raise the issue sua sponte." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996); *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013))). "A case becomes moot when factual developments render a claim 'no longer live and ongoing,' such that a decision on the merits will not 'affect the behavior of the defendant toward the plaintiff.'" *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) (quoting *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999)). "The crux of the mootness inquiry in an action for prospective relief is whether the court can afford meaningful relief that 'will have some effect in the real world.'" *Id.* (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010)). If a party has already received the relief it seeks, that request for relief is subject to *sua sponte* dismissal. *United States v. Fisher*, 805 F.3d 982, 989 (10th Cir. 2015) ("A claim is moot if a party has already obtained the only relief it seeks."); *McClendon*, 100 F.3d at 867 ("Because mootness is a matter of jurisdiction,

a court may raise the issue sua sponte.").

Therefore, the issue before the Court is whether the repeal of the zoning ordinance accomplished for MBOL any of the types of relief it seeks. MBOL requests three forms of relief—a permanent injunction prohibiting Defendants from approving and establishing the proposed dealership, a declaratory judgment stating that MBUSA violated the Colorado Dealer Act, and damages resulting from MBUSA's violations of Colorado law. Am. Compl. 16. The Court holds that the repeal of the zoning ordinance afforded MBOL the relief it seeks on its requests for a permanent injunction and declaratory judgment. Accordingly, these requests are moot.

Regarding an injunction, MBOL admits that "[t]he primary objective of [its] Complaint is to preclude the establishment of a new Mercedes-Benz dealership at 13831-13871 East Arapahoe Road." MBOL's Mot. for Admin. Closure 4, ECF No. 66. Moreover, MBOL and MBUSA do not dispute that the City of Centennial took specific action to prohibit the new dealership at the proposed location. *Id.* at 2 ("[R]ecent legislative developments in the City of Centennial have confirmed that MBUSA and BRMC cannot lawfully establish and develop the new Mercedes-Benz dealership at the proposed Centennial location."); MBUSA's Resp. to MBOL's Mot. for Admin. Closure 3, ECF No. 69 (stating that the City of Centennial repealed an ordinance that would have permitted the proposed dealership). Therefore, when the City of Centennial repealed the zoning ordinance and precluded the establishment of the dealership, MBOL "obtained the only relief it seeks" on its claim for a permanent injunction. *Fisher*, 805 F.3d at 989. In other words, regardless of whether this Court grants an injunction, MBUSA and BRMC are presently unable to build and operate the dealership at the proposed location. Indeed, MBOL acknowledges the lack of a live controversy when it states that "MBUSA wants to continue this litigation based on the theoretical possibility that

the City Council will someday change its mind and reconsider its decision to revoke the ordinance." MBOL's Reply in Support of Motion for Admin. Closure 2. ECF No. 72. The Court does not have jurisdiction to issue injunctions that will have effects in the real world only on the happening of a theoretical possibility. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("A federal court has no power to . . . declare principles of law which cannot affect the matter in issue in the case before it.").

Accordingly, MBOL's request for a permanent injunction is moot. The Court dismisses MBOL's fourth cause of action, which requests only a preliminary injunction, and the Court grants BRMC's motion to dismiss.

The Court also holds that MBOL's request for a declaratory judgment is moot. "[I]n the declaratory judgment context, it is critically important to determine whether the plaintiff has named, as defendants, individuals or entities that are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights." *Jordan v. Sosa*, 654 F.3d 1012, 1026 (10th Cir. 2011). MBOL seeks a declaratory judgment stating that MBUSA unreasonably approved the new dealership and gave insufficient notice of the approval. Am. Compl. 16. However, because of the ordinance, the requested judgment would not affect MBUSA's future conduct toward MBOL. If the Court were to issue a declaratory judgment stating that MBUSA unreasonably approved the location of the new dealership, MBUSA would not be permitted to build the dealership. If the Court declined to issue a declaratory judgment, MBUSA would still be unable to build the dealership as a result of the City of Centennial's ordinance. Therefore, the Court holds that the requested declaratory judgment would do nothing more than advise the parties of the legality of MBUSA's conduct; it would not settle "some dispute which affects the behavior of the [D]efendant toward the

[P]laintiff." *Rio Grande Silvery Minnow*, 601 F.3d at 1110.

At the hearing on MBOL's Motion for Administrative Closure, MBUSA argued that MBOL's claims are not moot, because absent a ruling from this Court, it will continue to pursue the proposed dealership, which will include petitioning the City of Centennial to change its zoning ordinance. Therefore, MBUSA contends that a ruling from this Court will, in fact, affect the conduct of the parties. However, a case is not justiciable merely because the requested relief will affect the conduct of the parties generally. Instead, the court's ruling must affect the defendant's conduct "toward the plaintiff." *See id.* That MBUSA will continue to seek financing, attempt to change the City of Centennial's ordinance, and accomplish other tasks incident to opening a dealership does not alter MBUSA's conduct toward MBOL. Although the establishment of a new dealership would arguably alter MBUSA's conduct toward MBOL, the requested relief would not presently affect MBUSA's ability to establish the dealership. *See Transwestern Pipeline Co. v. Fed. Energy Regulatory Comm'n*, 897 F.2d 570, 575 (D.C. Cir. 1990) ("A case is moot if events have so transpired that the decision will neither *presently* affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." (emphasis added)).

Furthermore, the Court is not convinced by MBUSA's argument that there are many uncertainties in the dealership-establishment process, the presence of which does not render all protest litigation moot. MBUSA is correct that there are many steps to establishing a dealership, such as receiving adequate financing. However, unlike the mere potential that every bank will reject financing for the dealership, the City of Centennial has specifically decided not to permit the dealership at the proposed location. Just as it would be entirely speculative to assert that a bank who rejected BRMC's financing application would reverse course and issue a loan to BRMC, it is

entirely speculative to contend that the City of Centennial will choose to amend its ordinance and permit the dealership at the specified location. *See Jones v. Temmer*, 57 F.3d 921, 923 (10th Cir. 1995) ("[D]efendants assert that the claims are not moot because the Colorado legislature remains free to reinstate the old law at a later date. We view this possibility as too conjectural and speculative to avoid a finding of mootness."); *see also Granite State Outdoor Advert., Inc. v. Town of Orange, Conn.*, 303 F.3d 450, 451–52 (2d. Cir. 2002) ("[T]here is no reason to think that, having completely revised its regulations through proper procedures, the Town has any intention of returning to the prior regulatory regime.").

In sum, the Court holds that MBOL's claims for prospective relief are moot in light of the City of Centennial's ordinance, which prohibits the new dealership at the proposed location.[2] As such, MBOL's requests for a permanent injunction and a declaratory judgment are dismissed as moot. However, because MBOL's first, second, third, and fifth claims for relief also seek damages as a result of MBUSA's conduct, the Court will analyze the merits of Defendants' arguments for dismissal only as they relate to MBOL's request for damages.[3]

## II.     First Claim for Relief: Violation of Colo. Rev. Stat. §§ 12-6-120(1)(h) and 120.3(1.5)

MBOL alleges that MBUSA unreasonably approved the new dealership location in violation

---

[2] Should the City of Centennial choose to modify its ordinance to permit the dealership at the proposed location, MBOL may file a motion to amend its complaint at that time to include its claims for prospective relief.

[3] MBUSA argues that the Court should strike MBOL's request for damages, because MBOL will incur damages only if MBUSA establishes the dealership. MBUSA's Mot. to Dismiss 27–28. However, MBOL pleads in its Amended Complaint that, as a result of MBUSA's unreasonable approval of the dealership location, MBOL has suffered damages, "including but not limited to diminution in value of its dealership." Am. Compl. ¶ 55. Accepting this allegation as true, the Court holds that MBOL has pleaded damages arising from MBUSA's conduct.

of Colo. Rev. Stat. § 12-6-120(1)(h) and § 12-6-120.3(1.5). Am. Compl. ¶¶ 45–55. Section 12-6-120(1)(h) declares it unlawful "[t]o violate any duty imposed by, or fail to comply with, any provision of section 12-6-120.3 . . . ." Section 12-6-120.3(1.5) provides:

> A manufacturer shall reasonably approve or disapprove of a motor vehicle dealer facility initial site location or relocation request within sixty days after the request or after sending the notice required by subsection (1) of this section to all of its franchised dealers and former dealers whose franchises were terminated, cancelled, or not renewed in the previous five years due to the insolvency of the manufacturer or distributor, whichever is later, but not to exceed one hundred days.

MBUSA argues MBOL cannot base its claim on a violation of Section 12-6-120.3(1.5), because that subsection does not give existing dealers standing to sue. MBUSA's Mot. to Dismiss 13–16. According to MBUSA, because Subsection (1.5) discusses a transaction exclusively between the manufacturer and a new dealer candidate, "only the dealer candidate has a right to complain of the manufacturer's disapproval or untimely approval of its site." *Id.* at 14.

Additionally, MBOL's first claim alleges that, in determining reasonableness, MBUSA failed to consider the four factors delineated in Section 12-6-120.3(4)(a). Am. Compl. ¶¶ 50–51. Section 12-6-120.3(4)(a) states:

> If a licensee or former licensee whose franchise was terminated, cancelled, or not renewed by the manufacturer, distributor, or manufacturer representative in the previous five years due to the insolvency of the manufacturer or distributor brings an action or proceeding before the executive director or a court pursuant to this part 1, the manufacturer shall have the burden of proof on the following issues:
>> (I) The size and permanency of investment and obligations incurred by the existing motor vehicle dealers of the same line-make located in the relevant market area;
>> (II) Growth or decline in population and new motor vehicle registrations in the relevant market area;
>> (III) The effect on the consuming public in the relevant market area and whether the opening of the proposed additional, reopened, or relocated dealer is injurious or beneficial to the public welfare; and
>> (IV) Whether the motor vehicle dealers of the same line-make in the relevant market area are providing adequate and convenient customer care for motor

> vehicles of the same line-make in the relevant market area, including but not limited to the adequacy of sales and service facilities, equipment, parts, and qualified service personnel.

MBUSA contends MBOL cannot assert a violation of Section 12-6-120.3(4), because that subsection does not impose requirements on MBUSA, and regardless, it is void for vagueness. MBUSA's Mot. to Dismiss 16–21. The Court will first address whether MBOL has standing and then analyze MBUSA's arguments regarding Section 12-6-120.3(4).

A.    MBOL's Standing to Assert a Violation of Section 12-6-120.3(1.5)

The Court holds that MBOL has properly asserted a violation of Section 12-6-120.3(1.5). Based on the subsection's reference to a separate subsection explicitly regulating the relationship between a manufacturer and an existing dealer and the general context of Section 12-6-120.3(1.5), the Court finds that the General Assembly intended to grant standing to existing dealers.

First, Subsection (1.5)'s explicit reference to Subsection (1) supports a holding that existing dealers have standing to sue for a violation of Subsection (1.5). In interpreting Colorado statutes, "courts look first and foremost to the language of the statute itself to discern legislative intent." *Martinez v. Badis*, 842 P.2d 245, 249 (Colo. 1992). Subsection (1.5) states that a manufacturer shall reasonably approve or disapprove an initial site location request "within sixty days after the request or after sending the notice required by subsection (1) of this section to all of its franchised dealers . . . whichever is later." Subsection (1) requires manufacturers to provide notice of the new dealership to existing dealers within whose relevant market area the new dealership would be located. Therefore, Subsection (1.5) establishes that a manufacturer may not approve or disapprove of a new dealership's site location until all nearby dealers have notice of the manufacturer's intent to do so. By requiring that dealers receive the notice under Subsection (1) prior to initial site

approval, the General Assembly demonstrated its intent to give dealers the ability to review the proposed location and lodge an objection if they determine it is unreasonable. Indeed, if the General Assembly did not intend to grant existing dealers a right to challenge the location, it would be unnecessary for dealers to receive notice prior to initial site location approval.[4]

Second, the Court finds the context in which Subsection (1.5) appears supports its interpretation that existing dealers have standing. *See People v. Bergen*, 883 P.2d 532, 538 (Colo. App. 1994) ("In order sensibly to effect the legislative intent embodied in an entire statutory scheme, statutes must be construed as a whole."); *see also Associated Gov't of Nw. Colo. v. Colo. Pub. Utils. Comm'n*, 275 P.3d 646, 649 (Colo. 2012) (stating that courts consider "the placement of a provision within the statutory framework" in determining the meaning of a statute). The General Assembly chose to place the "reasonable approval" requirement directly after, and as part of, Subsection (1), which deals exclusively with the manufacturer/existing dealer relationship. If the General Assembly intended Subsection (1.5) to protect new dealers only, it could have placed the

---

[4] MBUSA states in its reply that "a notice provision makes perfect sense even 'without a right to object.' Requiring a manufacturer to give 60-days' advance notice to nearby dealers allows these notified dealers to plan for upcoming changes in the market." MBUSA's Reply in Support of its Mot. to Dismiss 9, ECF No. 68. First, MBUSA's argument is impossible to square with its assertion that the initial location approval does not have an imminent effect on existing dealerships. *Id.* at 10–11 ("Existing dealers are unaffected if a manufacturer unreasonably approves a prospective dealer's initial site location—it is an initial request, so its approval does not affect the status quo in the market."). If the initial approval has such little effect on existing dealerships that it does not even constitute an imminent injury sufficient for standing, then there would be no reason to give existing dealers notice prior to the initial approval. Indeed, how could a dealership plan for changes in the market when those changes are so speculative to not even be imminently likely to affect the dealership? Second, although the Court holds below that the initial approval constitutes an imminent injury, the Court does not believe the General Assembly required that manufacturers give their dealers notice prior to initial approval solely to permit the dealerships to begin preparing for marketplace changes. Instead, as demonstrated by the context of Section 12-6-120.3, a more sensible reading of Subsection (1.5) is that it gives dealers the ability to review the proposed site location and object if they determine the location is unreasonable.

subsection at the end of Section 12-6-120.3 or in an entirely different section altogether. The decision not to do so indicates that the General Assembly intended Subsection (1.5) to protect existing dealers within whose geographic area the new dealership would be located.

That the General Assembly placed Subsection (1.5) before Subsection (4) also supports the Court's holding. As explained in detail below, Subsection (4) permits existing dealers to sue manufacturers and provides four factors relevant to whether a new dealership would be reasonable. *See, e.g.*, Colo. Rev. Stat. § 12-6-120.3(4)(a)(III) (stating that the manufacturer has the burden of proof on "whether the opening of the proposed additional . . . dealer is injurious or beneficial to the public welfare."). Thus, Subsection (1.5) follows a provision requiring that manufacturers give existing dealers notice and comes before a provision permitting existing dealers to sue manufacturers. It is reasonable to conclude that the General Assembly intended Subsection (1.5) to regulate the same relationship as that of the substantive subsections coming before and after it.[5] *See Associated Gov'ts of Nw. Colo.*, 275 P.3d at 649 (stating that courts should consider "the placement of a provision within the statutory framework" when interpreting statutes).

MBUSA argues that the Court should not interpret Subsection (1.5) as granting standing to existing dealers, because Subsection (1.5) is "not tied together by any text" to Subsection (1). MBUSA's Reply in Support of its Mot. to Dismiss 9. However, as the Court stated above, Subsection (1.5) uses Subsection (1) to delineate when a manufacturer can approve or disapprove an initial site location request. Therefore, contrary to MBUSA's argument, Subsection (1.5) specifically references Subsection (1), and this reference supports the Court's holding that the

---

[5] Subsection (2) provides two situations in which Subsection (1) does not apply, while Subsection (3) states general definitions. Colo. Rev. Stat. § 12-6-120.3(2)–(3).

General Assembly intended to give existing dealers the ability to challenge the information contained in the mandated notice.

MBUSA also argues that MBOL lacks standing under Subsection (1.5), because the approval of an initial site location request does not cause existing dealers to suffer an injury in fact. *Id.* at 10–11. However, MBOL pleads in its Amended Complaint that the location approval has caused the value of its business to decline. Am. Compl. ¶ 55. Accepting this allegation as true, the Court finds this sufficient to satisfy standing. Moreover, an actual injury is not necessarily required to establish standing; it is sufficient to show an imminent future injury. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007). MBUSA argued at the hearing on MBOL's motion for administrative closure that, in its experience, a dealership is substantially likely to be built once the manufacturer approves the site location. Therefore, by MBUSA's own admission, MBOL has alleged an imminent injury sufficient to establish standing.

In sum, the Court holds that Subsection (1.5)'s reference to Subsection (1) and its placement within Section 12-6-120.3 support an interpretation that Subsection (1.5) grants standing to existing dealers to sue manufacturers for unreasonably approving an initial site location. Accordingly, the Court denies MBUSA's motion to the extent it seeks dismissal of MBOL's first claim for relief. Because MBUSA also asks the Court to dismiss MBOL's first claim in as much as it asserts a violation of Section 12-6-120.3(4), the Court will briefly address this argument and the meaning of Subsection (4).

B.     Violation of Section 12-6-120.3(4)

MBUSA contends that MBOL cannot assert a claim based on Section 12-6-120.3(4), because that section does not impose any affirmative obligations on MBUSA, and even if it does, it is void

for vagueness. MBUSA's Mot. to Dismiss 16–21. Although the Court agrees that Subsection (4) does not form the basis of a cause of action, the Court holds that the factors delineated in Subsection (4) are nevertheless relevant to MBOL's claim under Subsection (1.5).

To the extent MBOL attempts to assert a claim against MBUSA for failing to consider the "express requirements of C.R.S. § 12-6-120.3(4)," Am. Compl. ¶ 50, the Court agrees with MBUSA that MBOL fails to state a claim. By its plain terms, Subsection (4) does not impose an affirmative obligation on manufacturers or create a cause of action. Unlike Subsections (1) and (1.5), which specifically state what manufacturers shall or shall not do, Subsection (4) does not require or prohibit any conduct. Subsection (1) states, "No manufacturer or distributor shall establish an additional new motor vehicle dealer . . . without first providing at least sixty days' notice." In Subsection (4), if the General Assembly wanted to require that manufacturers determine the population in the relevant market area has risen before approving a site location, it could have stated, "the manufacturer shall determine that the population in the relevant area has risen by at least the number of automobiles the new dealership expects to sell." Instead, the General Assembly provided that the manufacturer has the burden of proof on "[g]rowth or decline in population and new motor vehicle registrations in the relevant market area." Colo. Rev. Stat. § 12-6-120.3(4)(a)(II). Because this does not affirmatively require anything of manufacturers, the Court holds that Subsection (4) does not create a cause of action.

However, this does not mean that Subsection (4) has no significance. Subsection (4) establishes a dealership's right to sue a manufacturer, places the burden of proof in that suit on the manufacturer, and delineates four factors that are relevant to whether a manufacturer breached its obligation to reasonably approve a new dealer facility. *See Stamm v. City and County of Denver*,

856 P.2d 54, 56 (Colo. App. 1993) (stating that courts have a duty to interpret statutory language "in a reasonable and practical manner so as to impart a rational and cogent meaning to it"). Indeed, each of the four factors are relevant to whether a new dealership location is reasonable. For example, the size and permanency of investments incurred by existing motor vehicle dealers in the market area is relevant to whether it was reasonable for the manufacturer to potentially undercut this investment by establishing a new dealership. *See* Colo. Rev. Stat. § 12-6-120.3(4)(a)(I). Similarly, "whether the motor vehicle dealers of the same line-make in the relevant market are providing adequate and convenient customer care" is pertinent to whether a new dealership is needed to provide better customer care. *See id.* at § 12-6-120.3(4)(a)(IV).

In sum, Subsection (4) does not provide a substantive cause of action. However, the Court interprets it as delineating four relevant factors for courts and juries to consider when determining whether a manufacturer unreasonably approved an initial site request in violation of Subsection (1.5).[6] Accordingly, MBOL has properly used the factors in its Amended Complaint to state that MBUSA unreasonably approved the initial site location. However, MBOL's claim is dismissed to the extent it seeks to state a separate claim for failing to consider the four factors prior to approval.

## III.    Second Claim for Relief: Fraudulent Concealment

MBOL's second cause of action contends MBUSA fraudulently concealed that it was taking actions to establish a new dealership in MBOL's geographic area. Am. Compl. ¶¶ 56–65. According to MBOL, MBUSA had a duty to disclose its intent to establish a new dealership, and

---

[6] Because the Court does not interpret Subsection (4) as prohibiting any conduct or requiring any affirmative action, the Court need not analyze MBUSA's argument that Subsection (4) is void for vagueness. *See Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972) (stating that an enactment is void for vagueness only if "its *prohibitions* are not clearly defined" (emphasis added)).

MBOL invested in significant improvements to its dealership in reliance on its belief that MBUSA was not actively pursuing new dealers. *Id.* at ¶¶ 58–63.

To state a fraudulent concealment claim under Colorado law, a plaintiff must assert:

(1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed, (2) the defendant's knowledge that the fact is being concealed, (3) the plaintiff's ignorance of the fact, (4) the defendant's intent that the plaintiff act on the concealed fact, and (5) the plaintiff's action on the concealment resulting in damage.

*Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991); *Fed. Deposit Ins. Corp. v. Refco Grp., Ltd.*, 989 F. Supp. 1052, 1081 (D. Colo. 1997). Importantly, "to succeed on a claim for fraudulent concealment or non-disclosure, a plaintiff must show that the defendant had a duty to disclose material information." *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998).

MBUSA argues that MBOL fails to state a claim, because it did not owe MBOL a duty to disclose its intent to open a new dealership, and regardless, MBOL did not justifiably rely on MBUSA's non-disclosure. MBUSA's Mot. to Dismiss 29–35. The Court holds that MBUSA did not owe MBOL a common-law duty to disclose. As such, the Court dismisses MBOL's second claim.

Colorado courts have not addressed whether automobile manufacturers owe their dealers a duty to disclose. Generally, "[a] defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that 'in equity or good conscience' should be disclosed." *Mallon Oil Co.*, 965 P.2d at 111 (quoting *Smith v. Boyett*, 908 P.2d 508, 512 (Colo. 1995)). In determining whether a defendant should have disclosed material facts in good conscience, Colorado courts look to the Restatement (Second) of Torts § 551(2). *Id.* The Restatement gives five circumstances where a

party to a transaction has a duty to disclose:

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2).

In this case, only the first and fifth circumstances are relevant. Situations (b), (c), and (d) all deal with a fact pattern where the defendant has previously made a representation that, without further disclose, would be misleading. Because MBOL does not allege that MBUSA made any prior representations, the Court will confine its analysis to whether MBUSA and MBOL had a special relationship of trust and confidence and whether MBOL would have reasonably expected disclosure because of objective circumstances within the parties' relationship.

Regarding a relationship of trust and confidence, a fiduciary relationship is not necessarily required. *Refco Grp., Ltd.*, 989 F. Supp. at 1081. However, Colorado courts have generally found a special relationship between parties only when they work closely with one another and rely on each other often. *See Silverberg v. Colantuno*, 991 P.2d 280, 284–85 (Colo. App. 1998) (holding that partners in a business enterprise "stand in a relationship of trust and confidence to each other . . . ."); *Accident & Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 663 (Colo. 2012) (stating that the attorney-client relationship is "founded upon a special trust and confidence"); *Mancuso v.*

*United Bank of Pueblo*, 818 P.2d 732, 745 (Colo. 1991) ("A bank generally does not have a confidential relationship with its customers."). Indeed, "[v]ery few special relationships are recognized in Colorado tort law." *Miller v. Bank of N.Y. Mellon*, 379 P.3d 342, 348 (Colo. App. 2016).

Based on this precedent, the Court holds that an automobile manufacturer has a special relationship with one of its dealers, and thus, has a duty to disclose material facts, only if the dealer placed trust and confidence in the manufacturer beyond that inherent in a normal manufacturer/dealer relationship. *See Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1267–68 (10th Cir. 2005) (affirming the district court's holding that, under Kansas law, the plaintiff must show that it placed "confidence and trust in defendants beyond that inherent in any relationship between a franchisor and franchisee"). The Court's holding is supported by case law in Colorado finding that franchisors and franchisees generally do not have a fiduciary or special relationship. *Mr. Steak, Inc. v. Belleview Steak, Inc.*, 555 P.2d 179, 182 (Colo. App. 1976) (refusing to recognize a fiduciary relationship arising from a franchise contract alone); *RHC, LLC v. Quizno's Franchising, LLC*, No. 04CV985, 2005 WL 1799536, at 8–9 (Colo. Dist. Ct. July 19, 2005) (holding that, absent some evidence that the franchisor and franchisee did not stand in a "normal arms-length business arrangement," a franchisor does not have a fiduciary relationship with a franchisee). Just as is true with a franchisee, a dealer represents the manufacturer's brand, and is thus required to follow the manufacturer's mandates. Because of these similarities, the precedent from the franchisor/franchisee context supports the Court's holding.

Furthermore, courts in other states that have considered the issue have generally found that a special relationship does not exist between a manufacturer and a distributor or dealer. *See Ford*

*Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851, 865–68 (E.D. Mich. 2013) (holding that automobile manufacturers do not have fiduciary relationships with their dealers under Michigan law); *see also Devalk Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 81 C 4072, 1986 WL 4097, at *14 (N.D. Ill. Mar. 19, 1986) (holding that an automobile dealership and its owners "have been unable to establish that they reposed any special trust or confidence in [the manufacturer]. On the contrary, the record submitted to the Court indicates that the relationship between [the manufacturer] and plaintiffs was at all times an arms-length business relationship.") In *Myklatun v. Flotek Industries, Inc.*, the Tenth Circuit applied Oklahoma law to hold that a manufacturer did not have a duty to disclose its development activities to its distributor. 734 F.3d 1230, 1235 (10th Cir. 2013). According to the court, "Plaintiffs are contending that a manufacturer has a generalized duty to disclose all planning and development activities that could potentially affect a current distributor. However, we conclude that neither the contract between the parties nor Oklahoma law imposes such an obligation." *Id.* Similarly, the Court holds that Colorado law does not place a general duty on an automobile manufacturer to disclose all planning and development activities that could potentially affect its current dealers.

Accordingly, for MBUSA to have a duty to disclose information to MBOL based on a special relationship, MBOL must allege that it placed trust and confidence in MBUSA beyond that inherent in every manufacturer/dealer relationship. MBOL does not carry its burden. MBOL contends it placed trust in MBUSA when it invested in upgrades to its facilities. Am. Compl. ¶ 19. However, requiring another business to make upgrades before permitting them to sell your products is "no[t] evidence that [MBUSA] attempted to gain [MBOL's] trust and confidence." *See Mancuso*, 818 P.2d at 745 (holding that a bank generally does not have a relationship of trust and confidence with its

customers).  Indeed, required standards and upgrades does not differentiate the parties' relationship from that between every manufacturer and dealer.  Therefore, MBOL fails to plead that it has a special relationship of trust and confidence with MBUSA giving rise to a duty to disclose.

Regarding Restatement § 551(2)(e), MBOL has not alleged it had a reasonable expectation based on objective circumstances that MBUSA would disclose its plans to establish a new dealership.  *See* Restatement (Second) of Torts § 551(2)(e) (stating that a party has a duty to disclose facts basic to a transaction when "the relationship between [the parties], the customs of the trade or other objective circumstances," would reasonably create an expectation of disclosure); *Mallon Oil Co.*, 965 P.2d at 111 ("[O]ne party to a business transaction has a duty to disclose facts basic to the transaction when objective circumstances create a reasonable expectation of disclosure of those facts.").  To the contrary, the parties' contract, which MBOL references in its Amended Complaint, shows that MBUSA took steps to discourage MBOL from expecting open disclosure.  For instance, MBUSA disclaimed any type of special relationship.  Passenger Car Dealer Agreement 48 ("Dealer is an independent business . . . No fiduciary obligations are created by this Agreement.").  Furthermore, the dealer agreement permits MBUSA to establish a new dealership "at any time."  *Id.* at 19.  Therefore, MBOL does not allege objective circumstances created a reasonable expectation that MBUSA would disclose its development plans with MBOL.

In sum, MBOL fails to allege it had a special relationship of trust and confidence with MBUSA or that objective circumstances created a reasonable expectation of disclosure.  Because MBUSA did not owe MBOL a common-law duty to disclose its intent to establish a new dealership,

the Court dismisses MBOL's fraudulent concealment claim.[7]

## IV.    Third Claim for Relief: Breach of the Implied Covenant of Good Faith and Fair Dealing

MBOL's third cause of action asserts a breach of the implied contractual covenant of good faith and fair dealing.  Am. Compl. ¶¶ 66–73.  In Colorado, "[e]very contract contains an implied duty of good faith and fair dealing."  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo. App. 1994).  To state a claim for breach of that duty, the plaintiff must plead that the defendant used "discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract . . . ."  *Id.* at 1363.

MBOL's Amended Complaint seems to allege two different theories for a breach of the duty of good faith.  First, MBOL contends that MBUSA improperly exercised its "discretion in deciding whether to establish a new dealership within the geographic area from which MBOL draws its customer base."  Am. Compl. ¶ 69.  Second, the Amended Complaint states that MBUSA "failed to act in good faith and deal fairly with MBOL when it covertly solicited and invited new dealers into the Denver metropolitan market and approved the establishment of the new BRMC dealership approximately nine miles from MBOL . . . ."  *Id.* at ¶ 70.  Therefore, MBOL asserts that MBUSA acted in bad faith by approving the establishment of the new dealership, and separately, by not providing MBOL with notice of the new dealership.

MBUSA contends MBOL fails to state a claim, because MBOL does not allege that it was deprived of any reasonably expected benefits under the contract, that MBUSA exercised

---

[7] The Court need not reach MBUSA's argument that MBOL's reliance on MBUSA's non-disclosure was not justified.

discretionary authority dishonestly or unreasonably, or that MBUSA's objective was to prevent MBOL from receiving the reasonably expected benefits of the contract. MBUSA's Mot. to Dismiss 35–37.

The Court holds that regardless of the theory MBOL advances, MBOL fails to state a claim. An essential element of a cause of action for breach of the implied contractual duty of good faith is that the plaintiff was deprived of a reasonably expected benefit of the contract. *See ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007) ("[T]he implied covenant of good faith and fair dealing is breached when a party uses discretion conferred by the contract . . . to deprive the other party of the benefit of the contract."). MBOL's first theory asserts that by establishing the new dealership, MBUSA deprived MBOL of its expectation that MBUSA would not "undercut MBOL's investments and goodwill and effectively cannibalize MBOL's customers." Am. Compl. ¶ 69. Therefore, MBOL essentially contends it was deprived of its expectation that it would be the only dealer in its geographic area. However, "the implied duty of good faith and fair dealing cannot contradict terms or conditions for which a party has bargained, not can it inject substantive terms into the parties' contract." *Miller*, 379 P.3d at 348. Here, the dealer agreement provides that MBOL "has no right or interest in any AOI and that MBUSA may add new dealers to or relocate dealers into [MBOL's] AOI." Passenger Car Dealer Agreement 19. If the Court were to hold that MBUSA acted in bad faith solely by establishing a dealership within MBOL's geographic region, it would "obligate [MBUSA] to accept a material change in the terms of the contract, or to assume obligations that vary or contradict the contract's express provisions." *ADT Sec. Servs., Inc.*, 181 P.3d at 293. Because the dealer agreement specifically permits the conduct that MBOL claims breached the implied covenant of good faith, MBOL's first theory fails to state

a claim. *See* 13 *Williston on Contracts* § 38:11 (4th ed. 2017) ("[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract.").

MBOL's second theory contends that MBUSA breached the duty of good faith by soliciting new dealers into the Denver metropolitan market without providing notice to MBOL. Am. Compl. ¶ 70. The Court holds MBOL fails to plead that the lack of notice deprived it of a reasonably expected benefit of the contract. For example, MBOL does not allege that if it had received the notice, its profits would be greater, it would be able to sell a new line of vehicles, or that it would have received any other similar benefit under the contract.

MBOL's failure to allege the deprivation of a benefit is demonstrated by the distinction between this case and *McDonald v. Zions First National Bank, N.A.*, 348 P.3d 957 (Colo. App. 2015). In that case, the plaintiff borrowed funds from the defendant for a construction project. *Id.* at 960. The contract between the parties gave the defendant discretion to make changes to a document, called a cost breakdown, that allocated the total costs of the plaintiff's project. *Id.* at 967–68. The plaintiff argued that the defendant unreasonably exercised its discretion to modify the cost breakdown by amending it without notifying him. *Id.* at 968. Furthermore, the plaintiff asserted that the defendant denied him a benefit of the contract when the defendant refused at least one of the plaintiff's applications for loan funds on the grounds that the requested funds did not correspond to the terms listed in the cost breakdown. *Id.* The court agreed. *Id.* "According to plaintiff's assertions, the lack of notice deprived him of his ability to gain the benefit of the Agreement." *Id.* The plaintiff had a reasonably expected benefit in receiving loan funds, and the

defendant's failure to provide notice of its changes to the cost breakdown allegedly deprived him of that benefit.[8]  *Id.*

Here, in contrast, MBOL does not identify a reasonably expected benefit, such as an application denial, that it did not receive as a result of MBUSA's failure to provide notice of the new proposed dealership.  MBOL contends it had an "expectation that MBUSA would not engage in such double-dealing."  MBOL's Resp. to MBUSA's Mot. to Dismiss 29.  However, MBOL is essentially asserting that MBUSA acted unreasonably by engaging in double-dealing, which deprived it of its expectation that MBUSA would not engage in double-dealing.  To adopt this argument would conflate the two elements of a good faith claim into a single showing of unreasonable conduct.  A plaintiff would have to show only that the defendant's unreasonable conduct deprived it of its expectation that the defendant would not act unreasonably.

Therefore, the Court holds MBOL fails to allege that MBUSA's conduct deprived it of a reasonably expected benefit under the contract.  Accordingly, MBOL fails to state a claim for breach of the implied contractual covenant of good faith and fair dealing, and the Court dismisses MBOL's third claim for relief.

## V.     Fifth Claim for Relief: Violation of Colo. Rev. Stat. § 12-6-120(1)(w)(II)

MBOL's fifth claim asserts that MBUSA failed to give MBOL notice of an attempt to modify MBOL's AOI in violation of Colo. Rev. Stat. § 12-6-120(1)(w)(II).[9]  Am. Compl. ¶¶ 80–90.

---

[8]  The court nevertheless determined that dismissal of the plaintiff's claim was proper, because the evidence demonstrated that the defendant denied the plaintiff's applications for reasons other than the applications' failure to correspond to the cost breakdown.  *Id.* at 968–69.

[9]  As stated above, an Area of Influence, or AOI, is a collection of zip codes through which a dealership's performance is measured.  Am. Compl. ¶ 13.

That section provides that it is unlawful:

> To fail to notify a motor vehicle dealer at least ninety days before . . . [m]odifying, replacing, or attempting to modify or replace the franchise or selling agreement of a motor vehicle dealer, including a change in the dealer's geographic area upon which sales or service performance is measured, if the modification would substantially and adversely alter the rights or obligations of the dealer under the current franchise or selling agreement or would substantially impair the sales or service obligations or the dealer's investment.

Colo. Rev. Stat. § 12-6-120(1)(w)(II).

MBUSA contends that MBOL fails to plead a violation of Section 12-6-120(1)(w)(II), because MBOL does not allege that MBUSA modified or attempted to modify MBOL's AOI. MBUSA's Mot. to Dismiss 22–24. Additionally, MBUSA contends that even if it attempted to modify MBOL's AOI, MBOL fails to plead a substantial impairment to its rights, obligations, or investment. *Id.* at 24–25. Finally, MBUSA argues that if the Court reads Section 12-6-120(1)(w)(II) as prohibiting a change in MBOL's AOI, the section impairs MBUSA's dealer agreement in violation of the Contracts Clause of the United States Constitution. *Id.* at 25–27.

The Court holds that MBOL fails to state a claim, because MBOL does not allege MBUSA attempted to modify its AOI.[10] Neither the Colorado Dealer Act, nor any court case interpreting it, defines "attempt" in this context. Based on the language and context of Section 12-6-120(1)(w)(II), the Court holds that the General Assembly intended "attempt" to carry the same or a similar meaning to that in the criminal context. Criminal attempt requires that the defendant take a substantial step toward the commissioning of the offense beyond mere preparation. *Gann v. People*,

---

[10] MBOL does not contend that MBUSA has already modified MBOL's AOI. MBOL alleges only that the addition of the new dealership "will result in an alteration of adjustment of MBOL's AOI," not that MBUSA has already sent it a revised dealership agreement specifying a new AOI. Am. Compl. ¶ 82.

736 P.2d 37, 38 (Colo. 1987). Although this is clearly not a criminal case, the statute declares conduct "unlawful" and penalizes a manufacturer for violating it. Colo. Rev. Stat. § 12-6-120(1) ("[I]t is unlawful and a violation of this part 1 for any manufacturer . . . ."); *id.* at § 12-6-122 (stating that a dealership can bring a cause of action for violation of Section 12-6-120(1)(w)(II), and that a prevailing dealership may recover reasonable attorney's fees). Given the penalties for a violation, it is reasonable to interpret "attempt" as requiring something more than a mere act or instance of making an effort to accomplish something. *See* MBOL's Resp. to MBUSA's Mot. to Dismiss 17 (asking the Court to adopt this general definition of "attempt.").

Moreover, the Court's interpretation leads to a result more consistent with other provisions of the Dealer Act. *See Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010) ("[O]ur interpretation should give consistent, harmonious, and sensible effect to all parts of a statute."). Section 12-6-120.3(1) requires that manufacturers give their existing dealers sixty-days' notice prior to establishing a nearby dealership. If Section 120(1)(w)(II) required ninety-days' notice before a manufacturer took any action that eventually could lead to a change in a dealer's AOI, such as initial steps toward establishing a new dealership, the notice required by Section 12-6-120.3(1) would be superfluous. Indeed, the manufacturer would have already informed the dealer of its reasons for changing the dealer's AOI thirty days prior.[11]

---

[11] MBOL argues that the interpretation adopted by the Court renders the ninety-day notice superfluous, because the dealer will have already received the sixty-day notice. MBOL's Resp. to MBUSA's Mot. to Dismiss 16. The Court disagrees. The sixty-day notice required by Section 12-6-120.3(1) advises dealerships of the specifics regarding the establishment of a new dealership. In contrast, the ninety-day notice under Section 12-6-120(1)(w)(II) informs dealerships of the manufacturer's reasons for altering the dealer's AOI. In this context, because the establishment of a new dealership would be the reason for a change in AOI, the ninety-day notice would certainly inform the existing dealer of the proposed new dealership. This would render a subsequent sixty-day notice superfluous. However, the sixty-day notice would not necessarily advise the existing

29

A reading more consistent with the language and context of the statute is that an attempt to modify an existing dealership's geographic region requires a substantial step toward doing so. This interpretation gives a purpose to the ninety-day notice by permitting a dealer to review the specific changes that a manufacturer intends to make to its AOI. In contrast, requiring notice as soon as the manufacturer takes some step toward establishing a new dealership would not necessarily give the dealership an opportunity to review its proposed new geographic area, as that area may not be established, or even contemplated. Therefore, requiring notice under Section 12-6-120(1)(w)(II) at such a preliminary stage would do nothing more than repeat the information required by Section 12-6-120.3(1).

In sum, the Court holds that a manufacturer attempts to modify a dealer's franchise agreement when the manufacturer takes a substantial step toward the change of a dealership's geographic region. Here, MBOL does not allege that MBUSA took a substantial step toward altering its AOI. MBOL asserts only that MBUSA made plans to establish a new dealership, such as negotiating a letter of intent with BRMC. Am. Compl. ¶ 85. Although the actual establishment of a new dealership would cause MBUSA to eventually alter MBOL's AOI, engaging in steps toward establishing a dealership, without more, is not an attempted amendment. Accordingly, MBOL has failed to state a claim under Section 12-6-120(1)(w)(II).[12]

_____

dealer of the specifics regarding the dealership's new AOI. Therefore, the subsequent ninety-day notice would potentially contain information not included in the sixty-day notice. As such, the ninety-day notice would not be redundant.

[12] Because the Court holds that MBOL fails to allege a modification or attempted modification, the Court need not consider MBUSA's arguments that MBOL fails to plead substantial impairment or that Section 12-6-120(1)(w)(II) violates the Contracts Clause of the United States Constitution.

## **CONCLUSION**

The Court holds that MBOL's requests for prospective relief are moot in light of the City of Centennial's ordinance, which prohibits the conduct MBOL seeks to enjoin. Therefore, MBOL's fourth cause of action, which states an independent claim for a permanent injunction, is dismissed. As such, Defendant BRMC's Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) [filed March 1, 2017; ECF No. 41] is **granted**. BRMC is dismissed, with each party to bear its own fees and costs.

Regarding MBOL's claims for damages, the Court holds that MBOL's first cause of action states a claim on which relief may be granted. Specifically, MBOL has standing to allege that MBUSA unreasonably approved the establishment of a new dealership within its geographic region. However, the Court dismisses the remainder of MBOL's Amended Complaint. MBOL's second cause of action does not allege MBUSA owed MBOL a common-law duty to disclose the establishment of a new dealership. MBOL's third claim does not assert that MBUSA's use of its discretion deprived MBOL of a reasonably expected benefit of the dealer agreement. Finally, MBOL's claim for a violation of Section 12-6-120(1)(w)(II) does not allege MBUSA modified or attempted to modify the parties' dealer agreement. Accordingly, Defendant MBUSA's Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(1) and (6) [filed March 8, 2017; ECF No. 46] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 19th day of June, 2017.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge